## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SHAEDA BURGESS, individually, and on
behalf of other similarly situated individuals,

        Plaintiff,

vs.

UNIVERSAL CITY DEVELOPMENT
PARTNERS, LTD. a Florida limited
partnership, d/b/a UNIVERSAL ORLANDO
RESORT,

        Defendant.

Case No. 6:19-cv-02156

Judge Wendy W. Berger

Magistrate Judge Leslie R. Hoffman

## DEFENDANT'S MOTION TO DISMISS COMPLAINT AND MEMORANDUM IN SUPPORT PURSUANT TO FIRST-FILED DOCTRINE AND RULE 12(B)(6)

Defendant, Universal City Development Partners, Ltd. ("Defendant"), by and through its counsel and pursuant to the first-filed doctrine and Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves this Court to dismiss the Class Representation Complaint ("Complaint") with prejudice for the reasons set forth herein.

### Introduction

Plaintiff, Shaeda Burgess ("Plaintiff"), alleges that she received a receipt containing more than the last five digits of her credit card number in violation of the Fair and Accurate Transactions Act, 15 U.S.C. § 1681c(g)(1) ("FACTA").  Plaintiff is already pursuing what she admits is "an identical case" before this Court.  Pursuant to the first-filed doctrine, which is intended to prevent the waste of resources associated with adjudicating duplicative claims, this duplicative case should be dismissed.

In any event, Plaintiff's FACTA claim fails as a matter of law for at least two reasons.

First, Plaintiff has not alleged facts showing that Defendant willfully violated FACTA. Indeed, the reasonable inference from the facts alleged by Plaintiff is that Defendant did not willfully violate FACTA.

Second, Plaintiff does not allege facts to establish that she has suffered an injury sufficient to satisfy the "zone-of-interests" standing requirements to pursue a FACTA claim. Congress was clear that FACTA is intended to protect consumers "suffering from any actual harm to their credit or identity." Plaintiff does not allege that she suffered either of the two injuries for which the FACTA provides relief to a consumer: "identity theft" or "credit card fraud." In fact, Plaintiff alleges that she has taken steps to prevent such injuries from occurring. Instead, as her injuries, Plaintiff alleges that she had to take "action to safeguard the receipt" and the receipt presented a "heightened risk of identity theft." Regardless of whether Plaintiff's alleged injuries are sufficiently "concrete" to state a case or controversy for Article III standing, such alleged injuries absolutely do not provide Plaintiff with "zone-of-interests" standing to pursue relief through a FACTA claim.

The Complaint should be dismissed with prejudice.

## Background

### I.     Procedural History.

Plaintiff filed this identical case in this Court on June 5, 2019. *Burgess v. Universal City Dev. Partners*, No. 6:19-cv-01041 (M.D. Fla.) ("*Burgess I*") (Doc. 1). On October 14, 2019, after completing briefing on Defendant's motion to dismiss the Amended Complaint filed in *Burgess I*, Plaintiff moved for a stay of *Burgess I* pending a decision from the Eleventh

Circuit in *Muransky v. Godiva Chocolatier, Inc.*, regarding Article III standing in cases such as this one that allege violation of the Fair and Accurate Credit Transactions Act ("FACTA"). (*Burgess I*, Doc. 40.)   On November 6, 2019, the Court granted Plaintiff's motion to stay *Burgess I*.  *Burgess I*, Doc. 44.

Meanwhile, on October 16, 2019, Plaintiff filed this duplicative case ("*Burgess II*") in state court. *Burgess II*, Doc. 1-1.  Defendant timely removed *Burgess II* to this Court on November 12, 2019.  *Burgess II*, Doc. 1.

## II.     Alleged Facts.

Plaintiff seeks to assert a claim under FACTA as a putative class action.  Plaintiff alleges that "[o]n February 20, 2019, Plaintiff made a purchase using her personal American Express credit card at the Fire Eaters Grill, located at the Universal Orlando Resort, in Orlando, Florida." (*Burgess II*, Doc. 1-1 at ¶28.)   Plaintiff now alleges that she was "provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her American Express credit card account number in the field labeled 'Number' beneath the field labeled 'Card Name.' (*Id.* at ¶29.)[1]  Plaintiff alleges that the middle five (5) digits of her card number were truncated with zeroes.  (*Id.* at ¶30.)

Plaintiff does not allege that her receipt was lost or stolen, that anyone viewed her receipt, or that she was the victim of identity theft or credit card fraud.  Plaintiff also does not

---

[1] As with the Complaint and Amended Complaint in *Burgess I*, Plaintiff does not attach a copy of the alleged receipt, redacted or otherwise, to the Complaint in *Burgess II*.  Notably, in the original Complaint and another filing in *Burgess I*, Plaintiff repeated an inconsistent allegation that Defendant provided her with a receipt "bearing her full credit card account number." (*Burgess I*, Doc. 1 at ¶34; *Burgess I*, Doc. 23.)

allege that she suffered any actual damages.  To the contrary, she alleges that she affirmatively took "action to safeguard the receipt."  (*Id.* at ¶31.)

Plaintiff seeks to pursue her FACTA claim on behalf of a putative nationwide class, which she defines as follows:

> ***(i) All persons in the United States who, within the two (2) years prior to the filing of the complaint through the date of the Court's order granting class certification, (ii) engaged in one or more transactions using a debit card or credit card at the Universal Orlando Resort, while (iii) at which time Defendant's point-of-sale system was programmed to generate a printed customer receipt displaying more than the last 5 digits of the credit or debit card account number or the expiration date of the credit or debit card used in connection with such transaction(s).***

(*Id.* at ¶44 (emphasis in original).)  Plaintiff alleges that Defendant willfully violated FACTA and seeks statutory damages, punitive damages, attorneys' fees, expenses and costs.  (*Id.* at ¶59.)

### III.    Fair and Accurate Credit Transactions Act.

FACTA is a subset of the statutes contained within the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. §§ 1681, *et seq.*  FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).

When amending FACTA through the passage of the Credit and Debit Card Clarification Act of 2007, Congress stated the purpose of FACTA and scope of persons protected under FACTA.  PL 110–241, § 2, 122 Stat 1565 (June 3, 2008).  Specifically, the purpose of FACTA is to prevent identity theft and credit card fraud, and Congress expressly

intended for FACTA to provide protection to "**consumers suffering from any actual harm to their credit or identity**."  The amendment to FACTA provides as follows:

(a) FINDINGS.—The Congress finds as follows:

(1) The Fair and Accurate Credit Transactions Act (commonly referred to as "FACTA") was enacted into law in 2003 and 1 of the purposes of such Act is to **prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud**.

(2) As part of that law, the Congress enacted a requirement, through an amendment to the Fair Credit Reporting Act, that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.

(3) Many merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law.

(4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.

(5) **None of these lawsuits contained an allegation of harm to any consumer's identity.**

(6) Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.

(b) PURPOSE.—**The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected** while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

PL No. 110–241 § 2, 122 Stat 1565 (emphasis added).

Under FACTA, if the violation was "negligent," then the plaintiff may recover only "any actual damages sustained."  15 U.S.C. § 1681o(a)(1).  If the violation was "willful," then

the plaintiff may recover either "any actual damages sustained" or "damages of not less than $100 and not more than $1,000" and "punitive damages as the court may allow."  15 U.S.C. § 1681n(a)(1)(A); 15 U.S.C. § 1681n(a)(2).  Regardless of whether the violation was negligent or willful, if the plaintiff is successful, the defendant is also liable for the "costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681o(a)(2); 15 U.S.C. § 1681n(a)(3).

## Argument

### I.      The Complaint Should Be Dismissed Pursuant to the First-Filed Rule.

The Eleventh Circuit has explained that "[t]he first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013).  "Thus, we have held that where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Id.* (internal quotation and alteration marks omitted).  Consequently, "a district court has authority as part of its inherent power over its docket administration to stay or dismiss a suit that is duplicative of another case then pending in federal court."  *Greene v. H & R Block E. Enterprises, Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010).  The second suit may be dismissed "if it 1) involves the same parties or their privies; and 2) arises out of the same transaction or series of transactions as the first suit."  *Id.*

The first-filed rule prohibits plaintiffs from filing "duplicative complaints in order to expand their legal rights" and "ensures that a plaintiff may not split up his demand and

prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id.* (internal quotation marks omitted).  "The effect of this restriction is twofold: to ensure fairness to litigants and to conserve judicial resources." *Id.*  Because the first-filed rule serves such important interests, the party objecting to application of the rule bears the "burden of establishing compelling circumstance against" application of the rule.  *Rojas v. Am. Honda Motor Co.*, No. 19-21721-CIV, 2019 WL 6324616, at *2 (S.D. Fla. Nov. 26, 2019)

The court where the first suit was filed generally should decide what to do about the second suit.  *Greene*, 727 F. Supp. 2d at 1367.  When both suits are pending before the same federal court, that court can entertain a motion to dismiss filed in the second suit based on the first-filed doctrine.  *See id.* at 1366–69 (S.D. Fla. 2010) (dismissing later-filed suit based on first-filed doctrine).

Here, *Burgess I* and *Burgess II* involve the same FACTA claim, brought by the same plaintiff, on behalf of the same putative class, against the same defendant.  (*Compare Burgess I*, Doc. 28, *with Burgess II*, Doc. 1-1.)  Indeed, Plaintiff admits that *Burgess I* is "an identical case involving the same parties, claim, and facts." (*Burgess II*, Doc. 15 at 1.)  Both cases are now pending before this Court.  This situation fits squarely within the ambit of the first-filed rule.

Plaintiff asserts she filed this duplicative case "[b]ecause of the pending *en banc* consideration of *Muransky*…in order to vindicate and preserve the rights and claims of Plaintiff and the putative class, should the *Muransky* court hold that a plaintiff asserting a FACTA claim does not have Article III standing to have her claim heard in federal court." (*Burgess II*, Doc.

15 at 3.)  However, that does not satisfy Plaintiff's burden to establish "compelling circumstances" against application of the first-filed rule.  To the contrary, if Plaintiff is concerned about the propriety of *Burgess I*—which Plaintiff chose to file in federal court— then she should voluntarily dismiss *Burgess I* in favor of pursuing *Burgess II*.  Plaintiff certainly should not be permitted to simultaneously pursue what she admits are "identical" cases—causing the precise waste of party and judicial resources that the first-filed doctrine is meant to prevent.

District courts in the Eleventh Circuit have routinely granted motions seeking to apply the first-filed rule to put a stop to duplicative litigation.  *See Greene*, 727 F. Supp. 2d at 1367 (dismissing second-filed case); *Rojas*, 2019 WL 6324616, at *4 (granting motion to transfer case to first-filed district); *Lott v. Advantage Sales & Mktg. LLC*, No. 2:10-CV-00980-JEO, 2011 WL 13229682, at *2–6 (N.D. Ala. Jan. 26, 2011) (dismissing collective action allegations in later-filed FLSA case where individual plaintiffs were covered by certified collective in first-filed case).  Defendant respectfully requests that this Court exercise its broad discretion to do the same.  This case should be dismissed pursuant to the first-filed rule.

## II.     Alternatively, The Complaint Should Be Dismissed Pursuant To Rule 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "Determining the plausibility of a claim is a context-specific task that requires the reviewing court to utilize its own experience and common sense." *N.P.V. Realty Corp. v. Nationwide Mut. Assur. Co.*, No. 8:14–CV–03235–T–17MAP, 2015 WL 3494127, at *1 (M.D. Fla. June 3, 2015) (citing *Twombly,* 550 U.S. at 555).

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678. Moreover, courts may infer from the factual allegations in the complaint "obvious alternative explanations," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Iqbal,* 556 U.S. at 682.

In *Safeco Insurance Company of America v. Burr*, 551 U.S. 47 (2007), the Court held that the term "willful" in the FCRA's private enforcement provision requires a showing that the defendant acted knowingly or recklessly rather than negligently. *Id.* at 56-57. To comply with *Twombly*, *Iqbal*, and *Safeco*, a plaintiff asserting a "willful" FACTA violation must plead sufficient facts to support "plausible grounds to infer," *Twombly*, 550 U.S. at 556, that the violation stemmed from a reckless decision, not merely that the defendant knew of the statute and failed to comply, *Safeco*, 551 U.S. at 59.

"[A] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim, and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015).

**A.      Plaintiff Does Not State A Claim That Defendant Willfully Violated FACTA.**

The Amended Complaint should be dismissed because Plaintiff does not sufficiently allege that Defendant willfully violated FACTA.  Plaintiff seeks relief only under 15 U.S.C. § 1681n, which allows a consumer to recover either "actual damages" or statutory "damages of not less than $100 and not more than $1,000," punitive damages, and reasonable attorney's fees if the consumer proves that the defendant's violation was "willful."   15 U.S.C. § 1681n. (*Burgess II*, Doc. 1-1 at ¶59.)  This means that Plaintiff is not seeking to pursue a claim for a negligent violation of FACTA; only a willful violation.  Accordingly, if Plaintiff has failed to state a claim that Defendant willfully violated FACTA, the Amended Complaint should be dismissed.

The term "willfully" requires a plaintiff to show that the defendant's conduct was intentional or reckless. *Safeco v. Burr*, 551 U.S. at 57.  Simply alleging that a defendant is aware of FACTA is insufficient to state a claim for a willful violation and cannot survive a motion to dismiss.  *See, e.g., Komorowski v. All-Am. Indoor Sports, Inc.,* No. 13-2177, 2013 WL 4766800, at *3 (D. Kan. Sept. 4, 2013) ("Merely alleging that a defendant should be aware of a statute and fails to comply with it ... is insufficient to state a claim for willfulness.").

In this case, Plaintiff makes nothing more than boilerplate allegations of willfulness. Specifically, Plaintiff alleges that the law exists, credit card companies advised and required all merchants to comply with the law, and Defendant could have checked its machines to comply with the law, so, therefore, any non-compliance must be a willful violation.  (Doc. 1-1 at ¶¶14-19, (alleging statements from credit card companies to the public and merchants), ¶¶26-27 (alleging that other merchants complied with FACTA and Defendant should have

checked its point of sales terminals to make sure it was complying with FACTA).)

These are exactly the kinds of allegations that other courts have found insufficient to state a valid claim for willfulness.  *See e.g., Vidoni v. Acadia Corp.,* No. ll-cv-00448, 2012 WL 1565128, at *4 (D. Maine Apr. 27, 2012) ("Merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, *i.e.*, a voluntary, deliberate or intentional violation."); *Seo v. CC CJV Am. Holdings, Inc.,* No. CV 11-05031, 2011 WL 4946507, at *2 (C.D. Cal. Oct. 18, 2011) (holding that mere allegations that information about FACTA was available to defendant did nothing to support "naked assertion" that defendant was notified of FACTA's provisions and knowingly ignored them); *see also Huggins v. SpaClinic, LLC,* No. 09 C 2677, 2010 WL 963924, *2 (N.D. I11. Mar. 11, 2010) (granting motion to dismiss because allegations that FACTA was well-publicized and known in the industry "are not specific to the defendant" and "do not permit the inference that [defendant]'s conduct was anything more than negligent").

In *Reed v. Swatch Grp. (US), Inc.,* No. CIV.A. 14-896 ES MAH, 2014 WL 7370031 (D.N.J. Dec. 29, 2014), the court held that a complaint failed to state a claim because it did no more than allege that the law exists, credit card companies advised and required all merchants to comply with the law, and the defendants must have known about the law, so therefore, any non-compliance would be a willful violation. *Id.* at *3. The court found that the allegations were not at all particularized. *Id.* at *6.  Instead, "the fact that credit card companies advised *merchants* of FACTA's requirements . . . could be alleged against *any* alleged FACTA violator, and as such [it is] essentially boilerplate." *Id.* (quoting *Gardner v. Appleton Baseball Club,*

*Inc.,* No. 09-C-705, 2010 WL 1368663 (E.D. Wis. Mar. 31, 2010)).  Indeed, in *Gardner v.*

*Appleton Baseball Club, Inc.*, which formed the basis for the *Reed* court's holding, the court

noted:

> No doubt Plaintiff's counsel could open the complaint in his word processor,
> delete the Appleton Baseball Club, and substitute any other defendant in its
> place without disturbing much of the rest of the complaint at all. *Twombly* and
> *Iqbal* teach that such cut-and-paste jobs are not a substitute for real facts that
> plausibly "show," under Rule 8, that the Plaintiff is entitled to relief.

*Id.* at *6.  Similarly, here, Plaintiff's allegations are cut-and-paste boilerplate statements

insufficient to state a claim that Defendant willfully violated FACTA.[2]

Moreover, Plaintiff has not alleged facts that provide "plausible grounds to infer" that

Defendant willfully violated FACTA, as required by *Iqbal* and *Twombly*.  If the court discerns

a "more likely explanation" or an "obvious alternative explanation" for the alleged conduct or

state of mind, then the claim fails.  *See Iqbal,* 556 U.S. at 681; *id.* at 682.  Here, Plaintiff alleges

that Defendant partially truncated the credit card number by omitting the middle digits of the

card number and, notably, does **not** allege that Defendant included the expiration date on the

receipt.  It is implausible to conclude that Defendant complied with certain requirements of

FACTA, while it simultaneously willfully disregarded others.  Nor does Plaintiff allege

---

[2] Notably, Plaintiff did **not** allege against Defendant the type of specific non-boilerplate allegations of willfulness that some courts have found sufficient to withstand a motion to dismiss.  Examples include allegations of prior lawsuits against the defendant, disregarding vendor upgrade recommendations, and avoiding reprogramming expenses – none of which Plaintiff alleges.  *See Bouton v. Ocean Properties, Ltd.,* 201 F.Supp.3d 1341, 1350 (S.D. Fla. 2016) (allegation that Defendant has been sued for violations in the past, indicating Defendant is aware of the FACTA requirements); *Steinberg v. Stitch & Craft, Inc.,* No. 09-60660-CIV-HUCK, 2009 WL 2589142, *2-3 (S.D. Fla. 2009) (allegations that credit card companies notified defendant of FACTA requirements but defendant "did not wish to incur the additional expense of reprogramming or updated its point of sale equipment").

Defendant had any motivation to do so.  In the absence of any allegations explaining Defendant's allegedly inconsistent compliance, Plaintiff has provided no plausible grounds upon which to infer that Defendant willfully violated FACTA.  *Vidoni*, 2012 WL 1565128, at *4 ("The only reasonable inference from the Defendant's failure to implement FACTA at one of its locations and not others is that the Defendant's failure was inadvertent. […] The Defendant's conduct may have been negligent, but, . . . . it was not willful."); *Torongo v. Roy*, 176 F. Supp. 3d 1320, 1324 (S.D. Fla. 2016) ("Plaintiff… fails to offer any plausible reason why Defendant would comply with FACTA in one instance, and knowingly violate FACTA in the second.  Thus, Plaintiff has not pled facts from which I can infer that Defendant knowingly violated FACTA.").[3]   The inference and "more likely explanation" to be drawn by such alleged partial truncation is negligence – not willfulness.

---

[3]Though vacated by the Second Circuit and ultimately dismissed on remand for lack of Article III standing, two Southern District of New York decisions provide persuasive analysis of this issue.  *See Crupar-Weinmann v. Paris Baguette Am., Inc., ("Paris Baguette I")*, No. 13 Civ. 7013 (JSR), 2014 WL 2990110, at *4 (S.D.N.Y. June 30, 2014), *vacated and remanded sub nom. Cruper-Weinmann v. Paris Baguette Am., Inc.*, 653 F. App'x 81 (2d Cir. 2016); *Katz v. Donna Karan Int'l. Inc.*, No. 14 CIV. 740 PAC, 2015 WL 405506, at *2 (S.D.N.Y. Jan. 30, 2015), *vacated and remanded sub nom. Cruper-Weinmann,* 653 F. App'x 81; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017).  *Paris Baguette I* opined: "[T]he fact that defendant changed its credit card receipt to partially comply with FACTA's requirements renders implausible the claim that defendant was attempting to willfully evade FACTA's restrictions. Plaintiff neither alleges nor offers any reason for this Court to plausibly infer that the defendant would know about FACTA's requirements and change its credit card receipt to comply with one portion of FACTA, but would intentionally, knowingly, or recklessly choose not [to] remove the expiration date. At best, the allegation … supports an inference that defendant negligently violated FACTA, which does not suffice to state a claim in a case such as this, in which plaintiff does not allege actual damages."  *Paris Baguette I* at *4 (emphasis in original);  *see also Katz*, 2015 WL 405506, at *2 ("Plaintiff's claim is rendered further implausible by the complaint's failure to reconcile Defendants' partial compliance—redacting credit card expiration dates and all digits unique to the cardholder—with its alleged willful non-compliance.").

Plaintiff's allegations that Defendant willfully violated FACTA with regards to her do not meet the plausibility standards established by *Twombly, Iqbal,* and *Safeco* and, accordingly, should be dismissed pursuant to Rule 12(b)(6).

**B.      Plaintiff Has Not Suffered An Injury Within FACTA'S Zone-Of-Interests And Cannot Allege Proximate Causation.**

As a practical matter, even if the Court determines that Plaintiff sufficiently pleaded a willful violation of FACTA (she has not), the Amended Complaint should be dismissed because **this particular Plaintiff** does not have zone-of-interests standing to pursue such claim.  As the Supreme Court has held, "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 134 (2014).

The zone-of-interests test "applies to all statutorily created causes of action."  *Id.* at 129.  When asserting a statutory claim, a plaintiff must have suffered an injury within the "zone-of-interests" protected by the statute.  *Id.* at 127.  "Congress is presumed to legislate against the background of the zone-of-interests limitation, which applies unless it is expressly negated."  *Id.* at 129 (quotation marks and alteration omitted).  "Whether a plaintiff comes within 'the zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Id.* at 127 (quotation marks omitted).  "That question requires us to determine the meaning of the congressionally enacted provision creating a cause of action." *Id.* at 128.  In so doing, the Supreme Court explained that "[w]e do not ask whether in our judgment Congress *should* have authorized [the plaintiff's] suit, but whether Congress in fact

did so." *Id.* (emphasis in original); *see also Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.,* 641 F.3d 1259, 1269 (11th Cir. 2011).

As the Supreme Court has made clear, zone-of-interests standing is separate and apart from Article III standing.  *See Lexmark,* 572 U.S. at 132; *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017); *see also Friends of Trumbull v. Chicago Bd. of Educ.*, 123 F. Supp. 3d 990, 995 (N.D. Ill. 2015) ("Settled law has long distinguished between Article III standing and the statutory zone of interests.")

In *Lexmark*, the Supreme Court considered whether the plaintiff had zone-of-interests standing to assert a claim under the Lanham Act.  Illustrating the difference between Article III standing and zone-of-interests standing, and application of the latter, the Court explained:

> Thus, this case presents a straightforward question of statutory interpretation: Does the cause of action in § 1125(a) extend to plaintiffs like Static Control? The statute authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising. § 1125(a)(1). Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III. No party makes that argument, however, and the 'unlikelihood that Congress meant to allow all factually injured plaintiffs to recover persuades us that [§ 1125(a)] should not get such an expansive reading.'

*Lexmark,* 572 U.S. at 132 (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266 (1992)).

> We thus hold that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question.  Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.

*Lexmark,* 572 U.S. at 132.

Accordingly, whereas Article III standing asks whether the plaintiff has adequately alleged the existence of a concrete injury; the zone-of-interests test goes further and asks whether the plaintiff's alleged injury also was intended by Congress to be redressed through a claim under the specific statute at issue. *Id.* at 127; *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176-77 (2011) (evaluating whether statutory language protected zone-of-interest is as broad as allowed by Article III or whether statutory language served to narrow class of person who could sue); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 617 (7th Cir. 2015), *cert. denied sub nom. One Beacon Ins. Co. v. United States*, 136 S. Ct. 1374 (2016) ("Even though Appellees possess constitutional standing, we may nevertheless decline to hear this case if Appellees do not 'fall within the zone of interests protected by the law invoked.'"); *Disability Rights Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008) ("Because the prudential standing analysis assumes satisfaction of the Article III requirements, we turn first to the requirements set out in *Lujan.*"); *Am. Fed'n of Gov't Employees, Local 2119 v. Cohen*, 171 F.3d 460, 468 (7th Cir. 1999) (describing zone-of-interests test as "a further limitation on access to a judicial forum"); *Citizens For Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 401 F. Supp. 2d 115, 121 n.1 (D.D.C. 2005), *aff'd*, 475 F.3d 337 (D.C. Cir. 2007) ("Prudential standing requirements may only serve to narrow, not broaden, the class of parties that otherwise would have standing under Article III.").

In this case, ostensibly as the injuries that she suffered, Plaintiff alleges that she "was compelled to take action to safeguard the receipt," the receipt "invaded her privacy by disclosing her private information to anyone who might come in contact with the receipt," and

the receipt "breached Plaintiff's confidence in the proper handling of her information." (Doc. 1-1 at ¶¶31-33). Plaintiff also alleges that, with regards to Plaintiff and the putative class, Defendant "exposed them to a heightened risk of identity theft" and the conduct "resulted in the disclosure of Plaintiff's and the Class members' private financial information to persons who might find the receipts in the trash or elsewhere, as well as the Defendant's retail employees who handled the receipts." (*Id.* at ¶42.) Plaintiff does not allege that she put her receipt in the trash or that anyone has handled her receipt. Quite the contrary, Plaintiff alleges that she has safeguarded the receipt. (*Id.* at ¶31.)

The Eleventh Circuit is poised to decide whether Plaintiff's alleged injuries satisfy Article III standing. In *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir.), *reh'g en banc granted, opinion vacated*, 939 F.3d 1278 (11th Cir. 2019), the Eleventh Circuit held that the plaintiff, who alleged that he suffered an injury in the form of an increased risk of identity theft by the printing of a receipt with more than the last five digits of his credit card number, had sufficiently alleged a concrete injury for Article III standing. *Id.* at 1189-90.

> However, we have explained that a plaintiff can establish Article III standing at the pleading stage by alleging a risk of harm of the type Congress elevated to the status of a concrete injury when it created procedures designed to minimize that risk. Once a plaintiff does that, Article III's concreteness requirement is satisfied. Here, Congress established the acceptable level of risk at printing five digits of a credit card number. Dr. Muransky alleged a heightened risk of identity theft as a result of Godiva's FACTA violation, and that satisfies Article III under the principles *Spokeo* laid down.

*Id.* (citation omitted). Significantly, *Muransky* arose in the context of affirming a class action settlement that was approved over the objections of two class members—who had challenged the named plaintiff's Article III standing. *Id.* Accordingly, the Eleventh Circuit was not delving into the merits of the case—only whether there was jurisdiction to approve the

settlement.  The objecting class members and defendants did not raise the zone-of-interests test

to the Eleventh Circuit.  On October 4, 2019, the Eleventh Circuit vacated the panel decision

in *Muransky* and ordered the case to be reheard *en banc*.  *Muranksy v. Godiva Chocolatier,*

*Inc.*, 16-16486, 2019 WL 4891989 (11th Cir. Oct. 4, 2019).  The Eleventh Circuit has not yet

issued its *en banc* opinion.  This Court, however, need not wade into the murky waters of

Article III standing to decide whether Plaintiff has a valid claim under FACTA.  *See Steel Co.*

*v. Citizens for Better Env't,* 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that

the absence of a valid (as opposed to arguable) cause of action does not implicate subject-

matter jurisdiction, *i.e.,* the courts' statutory or constitutional *power* to adjudicate the case.")

(emphasis in original).

　　　　Regardless of whether Plaintiff's alleged injuries provide Plaintiff with Article III

standing, they absolutely do *not* provide Plaintiff with zone-of-interests standing necessary to

pursue a FACTA claim.  When applying the zone-of-interests test, "[t]he question is whether

the statute grants the plaintiff the cause of action that he asserts."  *Bank of Am. Corp.*, 137 S.

Ct. at 1302. Determining legislative intent "requires no guesswork" where Congress includes

an explicit "statement of the statute's purpose."  *Lexmark*, 572 U.S. at 131.  Here, Congress'

explicit statement of FACTA's purpose is to "prevent criminals from obtaining access to

consumers' private financial and credit information in order to reduce identity theft and credit

card fraud."  PL No. 110–241 § 2, 122 Stat 1565.[4]  To achieve that purpose, Congress could

---

[4] While the amendment to FACTA arose in the context of addressing a proliferation of class action lawsuits asserting claims based on the improper truncation of credit card expiration dates, Congress' findings and statement of purpose underlying FACTA are equally applicable to all FACTA claims.  For instance, Congress' expressed concern that FACTA claims were being asserted where "none of these lawsuits contained an allegation of harm to any

not have been clearer about who it intended to protect through the assertion of a FACTA claim:

"**to ensure consumers suffering from any actual harm to their credit or identity are protected** . . ." *Id.* (emphasis added); *see also Meyers v. Nicolet Rest. Of De Pere, LLC*, 843 F.3d at 727-28 (dismissing FACTA expiration date claim for lack of Article III standing and noting "[t]hat is why Congress sought to limit FACTA lawsuits to consumers 'suffering from any actual harm.'").   Plaintiff does not allege that any criminal accessed her receipt (or, for that matter, that anyone actually accessed her receipt), much less that she suffered an injury in the form of "identity theft" or "credit card fraud."   If there is a remedy for the injuries that Plaintiff alleges to have suffered, FACTA is not the vehicle through which to seek redress.[5] Plaintiff has not alleged that she is a "consumer[] suffering from any actual harm to [her] credit or identity" – *i.e.* the person to whom Congress intended to provide a FACTA claim.  PL No. 110–241 § 2, 122 Stat 1565.   Accordingly, Plaintiff's FACTA claim should be dismissed pursuant to Rule 12(b)(6).

Even if, at some point in the future, Plaintiff suffers injuries that arguably fall within the FACTA's zone-of-interests, she has alleged facts that preclude her from demonstrating proximate causation.   Indeed, "[i]t is a 'well established principle of [the common] law that in

---

consumer's identity."  PL No. 110–241 § 2(a)(5), 122 Stat 1565.  In this action, Plaintiff has not alleged harm to her identity.  It would be an absurd result to infer that Congress was limiting some FACTA claims because the statute was designed to "ensure that consumers suffering from any actual harm to their credit or identity are protected," PL No. 110–241 §2(b), 122 Stat 1565, while simultaneously allowing other FACTA claims to be pursued by consumers who do not allege that they are suffering from any actual harm to their credit or identity.

[5] For instance, Plaintiff implies that she has alternatives to a FACTA claim, *i.e.* claims for breach of confidence and breach of implied bailment, but she does not pursue relief through the assertion of either claim.  Doc. 1-1 at ¶1.

all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause.'"

*Bank of Am. Corp.*, 137 S. Ct. at 1305 (quoting *Lexmark,* 134 S. Ct. at 1390.)  "We assume

Congress 'is familiar with the common-law rule and does not mean to displace it *sub silentio*'

in federal causes of action."  *Id.*  "Proximate-cause analysis is controlled by the nature of the

statutory cause of action.  The question it presents is whether the harm alleged has a sufficiently

close connection to the conduct the statute prohibits."  *Lexmark,* 572 U.S. at 133.

Here, not only has Plaintiff failed to allege that she suffered identity theft or credit card

fraud that was caused by the printing of the alleged receipt, Plaintiff alleges that she has

"safeguarded the receipt"—thereby preventing such injuries from materializing.  (Doc. 1-1 at

¶31).  Moreover, by consciously choosing to keep the receipt rather than destroy it—though

fully aware of, and supposedly concerned about, the alleged contents of such receipt—Plaintiff

effectively has made her level of care or neglect in maintaining the security of the receipt a

superseding and intervening event that breaks any proximate causation between her obtaining

the receipt and any future injury.  Plaintiff has not alleged facts showing a proximate cause

between her receiving the alleged receipt and any injury within FACTA's zone-of-interests

and, for this additional reason, Plaintiff's FACTA claim should be dismissed pursuant to Rule

12(b)(6).

### Request for Oral Argument Under Local Rule 3.01(j)

Defendant respectfully requests oral argument on this motion.  Defendant estimates

that the time required for oral argument will be one (1) hour.

**Conclusion**

For the foregoing reasons, Universal City Development Partners, Ltd. respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint with prejudice.

Dated:  December 23, 2019                    Respectfully submitted,

                                             UNIVERSAL CITY DEVELOPMENT
                                             PARTNERS, LTD.


                                             By:  /s/ *Joel Griswold*

                                             Joel Griswold (jcgriswold@bakerlaw.com)
                                             rbouey@bakerlaw.com

                                             **BAKER & HOSTETLER LLP**
                                             200 S. Orange Ave., Suite 2300
                                             Orlando, Florida 32801-3432
                                             Telephone: (407) 649-4088
                                             Facsimile:  (407) 841-0168

                                             *Counsel for Defendant,*
                                             *Universal City Development Partners, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the above

and foregoing document was served this 23rd day of December, 2019, via the court's CM/ECF

system upon all counsel of record.


*/s/ Joel Griswold*

4846-1269-1886.1