**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO. 6:19-cv-2156-Orl-78LRH

| | |
|---|---|
| SHAEDA BURGESS, *individually,*<br>*and on behalf of other similarly situated*<br>*individuals*,<br><br>            Plaintiff,<br><br>v.<br><br>UNIVERSAL CITY DEVELOPMENT<br>PARTNERS, LTD., *a Florida limited*<br>*partnership*, d/b/a UNIVERSAL<br>ORLANDO RESORT,<br><br>            Defendant. | <u>**CLASS ACTION**</u><br><br>(JURY TRIAL DEMANDED) |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO**</u>
<u>**DEFENDANT'S MOTION TO DISMISS**</u>

Plaintiff, Shaeda Burgess ("Plaintiff") by and through undersigned counsel hereby submits her Response in Opposition to Defendant's Motion to Dismiss (the "Motion") [ECF No. 18] and states as follows:

## I. INTRODUCTION

On December 23, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint, [ECF No. 18], after Defendant itself removed the case from the Florida Ninth Judicial Circuit Court. [ECF Nos. 1; 1-1]. Defendant's Motion mirrors the motion to dismiss it filed in a separate case Plaintiff had commenced in this Court. *Burgess v. Universal City Dev. Partners, Ltd*, Case No. 6:19-cv-1041-Orl-78LRH ("*Burgess I*") [ECF Nos. 1, 18, 28, 32].

In her Complaint here, similarly to *Burgess I*, Plaintiff alleges that Defendant willfully violated the Fair and Accurate Transactions Act, 15 U.S.C. § 1681c(g)(1) ("FACTA"). In its

Motion, Defendant argues that the Complaint should be dismissed because (a) of the first-filed rule in connection with *Burgess I*; (b) of a failure to allege Defendant's violation was willful; and (c) of a failure to allege facts to establish that an injury sufficient to satisfy the "zone-of-interests" standing requirements. Each of these arguments is fallacious, as detailed below. First, compelling reasons disfavor the application of the first-filed rule to this case; second, Plaintiff sufficiently and adequately alleged Defendant willfully violated the requirements of FACTA; and last, the type of harm Plaintiff suffered is the exact type of injury Congress intended to prevent when it enacted FACTA.

Moreover, it is clear now that Defendant's removal of this case to this Court had the sole purpose of seeking dismissal of the action. The two main arguments of the Motion—the first-filed rule and lack of prudential standing—were occasioned exclusively by the removal. If Defendant had not removed the case, these arguments would have no meaning at all. This confirms that Defendant's removal was a pretext to seek dismissal on technicalities that would not exist but for the removal itself. Accordingly, and as further detailed below, Defendant's Motion to Dismiss should be denied and this case should be remanded to state court.

## II. STATUTORY HISTORY

FACTA was adopted in 2003 as an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681-81x ("FCRA"). FACTA introduced a variety of new consumer financial protections, including the right to obtain free credit reports, regulations governing fraud alerts and identity theft prevention, and the provision at issue here, prohibiting the printing of the expiration date or more than the last five digits of a debit or credit card number on a transaction receipt:

> ...no person that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5 digits of the card number** or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1) (emphasis added).

In regulating printed receipts, Congress recognized the risk posed by the vast proliferation of small slips of paper bearing consumers' financial information, which could easily be lost, and which the unscrupulous could easily retrieve after disposal. S. Rep. No. 108-166, at 13 (2003) (provision "included . . . to limit the number of opportunities for identity thieves to 'pick off' key card account information"). Ample time was allowed for merchants to comply. *Id.* § 1681c(g)(3) (permitting one or three years for compliance, depending on vintage of device).

In 2007, because of the confusion regarding the meaning of the statute, Congress amended FACTA to excuse *past* violations involving the printing of only the expiration date. *See* 15 U.S.C. § 1681n(d) (deeming there to be, until June 3, 2008, no willfulness if expiration date was the only improperly printed information). Congress did not, however, alter the prohibition on printing more than the last five digits of the card number. The 2007 amendment thus reaffirmed the judgment that printing more than the last five digits of a credit or debit card exposes consumers to an unacceptable risk of harm. Defendant knowingly or recklessly violated the truncation provision on a massive scale, more than ten years after Congress reiterated to merchants nationwide the serious risks posed by such conduct.

### III. ARGUMENT

**A. The First Filed Rule Does Not Apply to This Case**

Defendant removed this action to this Court with the sole intention of seeking dismissal. As such, the removal is poisoned at its roots and improper. Defendant cannot have it both ways; it cannot remove this case to this District Court to claim it has no jurisdiction over it because of, *inter alia*, the first-filed rule.

The application of the "first-filed" rule is discretionary. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016). Most courts presented with the issue of parallel cases in federal and state court have concluded that the "first-filed rule" applies **only** to competing claims in federal courts. *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1375 (S.D. Fla. 2014); *Artmark Prod. Corp. v. Conbraco Indus.*, No. 11-20879-CIV, 2012 WL 1155132, at *2 (S.D. Fla. Apr. 5, 2012) ("The first-filed rule provides that, '[w]here two actions involving overlapping issues and parties are pending in two *federal* courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.'") (emphasis in original) (quoting *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir.2005)); *Melillo v. Shendell & Assocs., P.A.*, No. 11-62048-CIV, 2012 WL 253205, at *3 (S.D. Fla. Jan. 26, 2012) ("a close reading of the case law suggests that this rule applies to competing claims filed in separate federal courts, not competing federal and state court actions.") (internal quotations omitted).

In fact, unlike duplicative cases in different federal courts, nothing prevents a party from filing parallel actions in federal and state court. *See Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 295 (1970) (where "state and federal courts ha[ve]

4

concurrent jurisdiction . . . neither court [i]s free to prevent either party from simultaneously pursuing claims in both courts"); *see also Klay v. United Healthgroup, Inc.*, 376 F. 3d 1092, 1102 (11th Cir. 2004) ("One of the main exceptions to the district court's otherwise broad power to protect its jurisdiction is that, in general, it may not enjoin state court proceedings.").

"The first-filed rule does not automatically compel the first-seized court to exercise jurisdiction. The strong presumption favoring jurisdiction in the original forum can be overcome if the party objecting to jurisdiction demonstrates the existence of compelling circumstances." *Lexington Ins. Co. v. Proformance Plastering of Pensacola, Inc.*, No. 613CV904ORL22TBS, 2013 WL 12155502, at *2 (M.D. Fla. Oct. 9, 2013); *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("The first-filed action is preferred . . . unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise. Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served.") (internal quotations omitted).

As Defendant noted in its Motion, the purpose of the first-filed rule is to avoid the filing of duplicative actions in _different federal courts_ to avoid that a plaintiff splits up his demand and prosecutes it by piecemeal. [ECF No. 18 at 6-7]. That is not the case here. Plaintiff filed her complaint in the Florida Circuit Court of the Ninth Judicial Circuit and, then, Defendant occasioned duplicative actions in the same district when it removed the action to this Court with the sole purpose of seeking dismissal. Plaintiff has not filed *multiple actions in different federal courts* to split her litigation and, hence, the purpose and spirit of the first-filed rule indicate the rule plays no role here.

Similarly, the cases Defendant relies upon to support its Motion are easily distinguishable from the present action. In *Rojas v. Am. Honda Motor Co.*, for instance, the plaintiff had filed *three actions* in *different district courts* and the court found that the plaintiff had been forum shopping. No. 19-21721-CIV, 2019 WL 6324616, at *1 (S.D. Fla. Nov. 26, 2019). Because of this set of facts, the court in *Rojas* found that "not applying the first-filed rule in this case would reward Plaintiff for the very type of forum shopping that Plaintiff argues the rule was meant to discourage." *Id.*

Here, Plaintiff is not forum shopping. Plaintiff is simply preserving her rights and those of the unnamed class members by filing a state court action while the federal case is stayed to avoid issues of statute of limitation, spoliation of evidence, and undue delay while the Eleventh Circuit decides the rehearing *en banc* in *Muransky v. Godiva Chocolatier, Inc.*, 939 F.3d 1278, 1279 (11th Cir. 2019). The two actions—*Burgess I* and the present case—are now before this same Court because of Defendant's very own decision to remove the litigation in federal court only to then challenge the fitness of this forum to hear the case. Clearly, this is not the scenario the first-filed rule meant to control.

In *Greene v. H & R Block E. Enterprises, Inc.*, the plaintiff filed two identical lawsuits in the same district court to circumvent a limited conditional certification of a class. 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010). The court in *Greene* refused to consolidate the two cases and dismissed the later-filed case because consolidation "would have the unacceptable consequence of allowing additional conditional plaintiffs to join [the first class] beyond this Court's mandated deadline for doing so." *Id.* at 1368.

Here unlike *Greene*, no class has been certified, and allowing Plaintiff to pursue this action (in state court) would not enlarge Plaintiff's or the class' rights, would not result in a bigger class of individuals similarly situated, and would not contravene a court's order. Further in *Greene*, the court noted that dismissal would not bar other avenues of recovery by the aggrieved plaintiffs, (*Greene*,727 F. Supp. 2d at 1368), whereas here, the risk of prejudice to Plaintiff and the class is great. [S*ee* ECF No. 22 at 4-6]; [*Burgess I*, ECF No. 40 at 2].

Lastly, in *Lott v. Advantage Sales & Mktg. LLC*, the court dismissed without prejudice the individual claims of the named plaintiff who purported to bring a collective suit identical to one that had already been filed by different named plaintiffs in another district court. No. 2:10-CV-00980-JEO, 2011 WL 13229682, at *2–6 (N.D. Ala. Jan. 26, 2011). Specifically, the court in *Lott* held that a dismissal of the individual claims without prejudice was appropriate so that the plaintiff could either refile her claims as individual claims or opt-in the pending previous litigation, allowing the plaintiff an opportunity to join the previous litigation or file an amended complaint in the same action alleging only her individual claims. *Id.* at *6.

This is not the case here. Plaintiff, Burgess, filed a separate action in state court to preserve her and the putative class' rights while the law in the Eleventh Circuit on Article III standing remains uncertain. Plaintiff here, unlike *Lott*, does not have the option of joining another lawsuit in a different district court, refiling, or amending to allege an individual claim. Plaintiff had the opportunity to file her state case, and Defendant deprived her and the class of their day in court by removing the state case to this Court—where jurisdiction remains unsettled until the *Muransky* decision—only to seek dismissal.

Moreover, Defendant's Motion and its jurisdictional arguments confirm that the removal was improper because Defendant failed to meet its burden proving all federal jurisdictional prerequisites are met and instead argues this Court cannot hear this case. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir.2009); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1279 (11th Cir. 2015). Defendant filed a motion to dismiss arguing that this Court should not hear the case because of the first-filed rule and because Plaintiff lacks prudential standing. *See* [ECF No. 18]. Plaintiff disagrees that Defendant's arguments have any merit. However, neither Plaintiff nor this Court should fill the gaps Defendant left when it removed this case to a federal court while failing to prove the Court has jurisdiction, and then moved to dismiss the action.

As discussed in Plaintiff's Motion to Remand, [ECF No. 15], and Response to the Order to Show Cause, [ECF No. 22], this Court should ignore Defendant's jurisdictional games played with the sole proposition of seeking dismissal on a technical basis. Although this is the second case Plaintiff filed, it should not be dismissed based on the first-filed rule for numerous reasons. First, Plaintiff did not file this action here, but rather in state court where she wishes to remand the case. There are compelling reasons that forced Plaintiff to file a second case in state court. Specifically, the state action was filed to avoid an indefinite delay while awaiting the resolution of the rehearing *en banc* in *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019) and to eliminate the risk of destruction and spoliation of evidence which would occur if the case could not proceed until final resolution of *Muransky*. *See* [ECF Nos. 15, 22]; *Oliva v. United States*, No. EP-18-CV-00015-FM, 2019 WL 2572554, at *2 (W.D. Tex. Apr. 29, 2019) ("Further delays could result in the weakening of memories from eyewitnesses or

the spoliation of evidence. Therefore, this factor does not support the Motion [to stay].");
*Ariba, Inc. v. Emptoris, Inc.*, No. CIV.A. 9:07-CV-90, 2007 WL 3132606, at *1 (E.D. Tex.
Oct. 23, 2007) ("Ariba states that the patents were issued in 1999, and a stay of any significant
time will result in spoliation of evidence. . . . Under these circumstances, this factor weighs in
favor of denying a stay.").

These same compelling reasons justifying the filing of the state complaint and
supporting a remand of this action to state court disfavor the application of the first-filed rule
in this case, especially when considering that there is no waste of judicial resources while
*Burgess I* is stayed.[1] *See Burgess I*, [ECF No. 44] (order granting Plaintiff's Motion to Stay
and staying the case until the resolution of the rehearing *en banc* in *Muransky*). The possibility
that the Eleventh Circuit finds that there is no standing in *Muransky*,[2] also disfavors the
application of the first-filed rule. *See Q Fin. Direct, Inc. v. Landis*, No. 07-23036-CIV, 2008
WL 11406183, at *4 (S.D. Fla. Mar. 21, 2008) ("Ordinarily, if the first-filed forum lacked
jurisdiction over all necessary or desirable parties, that might be a compelling reason for
disregarding the first-filed rule").

The filing of Defendant's Motion to Dismiss is also irrelevant if the Court decides to
remand this case because "a federal court must remand for lack of subject matter jurisdiction

---

[1] Notably, Defendant insists that this case should be dismissed, rather than remanded or consolidated, even though the first-filed rule does not automatically mandate dismissal of the second case; it rather offers a range of possibilities that Defendant does not explore. *Compare* [ECF No. 20] (requesting that the Court dismiss this case rather than consolidate) *with Kamparri Trading Ltd. v. Match.com, L.L.C.*, No. 12-23573-CIV, 2012 WL 12865851, at *2 (S.D. Fla. Dec. 11, 2012) ("The first-filed rule "not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide **whether the second suit filed must be dismissed, stayed or transferred and consolidated**") (emphasis added).

[2] Plaintiff is confident that the Eleventh Circuit will ultimately hold that plaintiffs in FACTA cases suffer a concrete injury sufficient to confer Article III standing. However, the outcome of the *Muransky* rehearing cannot be predicted at this time.

notwithstanding the presence of other motions pending before the court." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *see also, King v. King*, No. 3:16-CV-630-PK, 2016 WL 4940317, at *7 (D. Or. Sept. 14, 2016) ("both defendant and plaintiffs are in full agreement [] that [plaintiffs' claims are not, at this time, justiciable in this court]. Defendant and plaintiffs differ only as to the appropriate remedy, with . . . defendant arguing in favor of outright dismissal, and plaintiffs' arguing in favor of remand"). In sum, there are compelling reasons not to apply the first-filed rule to this action, Defendant's Motion should therefore be denied, and this case should be remanded to state court.

### B. <u>Plaintiff Sufficiently Pled Defendant Willfully Violated FACTA</u>

Defendant contends the Complaint should be dismissed because it does not sufficiently allege that Defendant willfully violated FACTA. This argument is without merit. "Willful" means "knowing" or "reckless", not "intentional." *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 56, fn. 8 (2007) (rejecting an appellate opinion holding that "willfulness" required a showing that the defendant acted "knowingly and intentionally"). Accordingly, Plaintiff needs only to allege a "knowing" or a "reckless" violation.

#### (i)  *Plaintiff Sufficiently Alleges Defendant Knowingly Violated FACTA*

Plaintiff sufficiently alleges that Defendant knowingly violated FACTA's truncation provision (*i.e.*, printing more than the last five card digits on the receipt). The Complaint contains numerous factual allegations demonstrating that Defendant was aware of the truncation requirement but violated it anyway. Such facts include the wide publication of FACTA's requirements, the documentation provided to Defendant, Defendant's knowledge of

FACTA's provision, common industry practices regarding FACTA compliance, and the credit card issuers' rules for merchants. [ECF No. 1-1 ¶¶ 14-19, 26-27, 36].

All of the country's credit card companies uniformly informed merchants, including Defendant, that all merchants were prohibited from printing more than the last five digits on point-of-sale receipts, [ECF No. 1-1 ¶¶ 14-19], and Defendant contractually promised it would not do so, [*id.* ¶¶ 16-19, 27]. Specifically, American Express—Plaintiff's credit card issuer—required its merchants "[p]ursuant to Applicable Law [to] truncate the Card Number and [] not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members." [*Id.* ¶ 18]. MasterCard likewise instructs that "a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN)" [*Id.* ¶ 19]. And the rules mandated by VISA provide that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." [*Id.* ¶ 16]. By virtue of its contractual obligations with all of the country's major debit or credit card companies to abide by the FACTA truncation requirement, Defendant is presumed to know this requirement. *See Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1521 (S.D. Fla. 1995) ("[A] person who signs a contract is presumed to know its contents.").

Plaintiff also plausibly alleges that Defendant—a sophisticated organization and entertainment destination, which employs multiple personnel to monitor and ensure its compliance with laws and regulations—was made well aware of FACTA and its truncation provision when the law was widely publicized during and after its enactment in 2003. [ECF No. 1-1 ¶¶ 14-15, 17, 36, 41); *see also Dover v. Shoe Show, Inc.*, No. 12-694, 2013 U.S. Dist.

LEXIS 59418 at *7 (W.D. Pa. Mar. 19, 2013) ("[T]he Complaint does allege sufficient publicity and guidance from credit card processors to place a sophisticated retailer with over 1,000 stores on notice of its obligations under FACTA.").

FACTA also made headlines in 2008 when Congress granted amnesty for certain FACTA violations, and numerous judicial opinions over the years ruled that it is illegal to print more than the last five digits of the debit or credit card number. *See, e.g.*, *Tchoboian v. FedEx Office & Print Servs.*, No. CV10-1008, 2011 U.S. Dist. LEXIS 158776 at *11 (C.D. Cal. Nov. 14, 2011) ("FACTA clearly prohibits the printing of more than the last 5 digits of the card number"). Despite its awareness of FACTA and its contractual obligation to abide by its truncation requirements, Defendant systematically printed more than the last five digits of its customers' credit and debit card numbers on receipts at a location that served a significant number of consumers on a daily basis. [ECF No. 1-1 ¶¶ 34-41]. Defendant was made aware of the violation each time it committed one because the debit or credit card numbers are displayed on the face of the receipts it printed. [*See id.* ¶¶ 27, 37-39].

The foregoing allegations are sufficient to show that Defendant's violation of the five digits requirement was knowing, and thus willful:

> Plaintiff alleges that Defendant had actual and constructive knowledge of FACTA's requirements several years before it was required to come into compliance, but nonetheless ignored these requirements after FACTA became effective []. The Complaint states that major credit card companies 'notified the merchants, including the Defendant, that the FACTA prohibited the printing of more than the last five digits of the credit/debit card number and/or the expiration dates associated with the credit/debit card account and that they were required to comply with the FACTA. . . . These allegations are sufficient... .

*Steinberg v. Stitch & Craft, Inc.*, 2009 U.S. Dist. LEXIS 72908, at *6-7 (S.D. Fla. Aug. 18, 2009); *see also Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2015 WL 13815657, at *4 (S.D. Fla. Sept. 2, 2015) ("Courts within this Circuit, including this Court, when faced with allegations similar to Plaintiff's here, found such allegations to be sufficient to state a claim."), *Lavery v. Radioshack Corp.*, 2014 U.S. Dist. LEXIS 85190 at, **5-6 (N.D. Ill. June 23, 2014) ("Such allegations have repeatedly been held sufficient to survive the pleading stage."); *Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197, at *8 (D. Md. Apr. 22, 2010) ("Buechler has sufficiently alleged willfulness."); *In Re: The TJX Cos., Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S. Dist. LEXIS 38258, at *10 (D. Kan. May 9, 2008) ("[C]ourts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute.").

Here, Defendant printed thousands of receipts containing sensitive financial information of its customers, while it would take only a few seconds to discover that ten digits of consumers' credit and debit card numbers were being unlawfully printed on those receipts. Defendant's willfully disregarded the law and its obligation to securely process its customers' credit and debit card transactions. Thus, Defendant knowingly violated the truncation requirement of FACTA.

(ii)    *Plaintiff Sufficiently Alleges Defendant's Violation Was Reckless*

Even if Defendant were correct—which it is not—in its assertion that the Complaint somehow fails to sufficiently allege that Defendant violated FACTA "knowingly," the Complaint most certainly alleges facts demonstrating that Defendant violated FACTA "recklessly," which is also sufficient to establish willfulness.

Unlike knowingness, recklessness is an objective standard, *Safeco Insurance Co.*, 551 U.S. at 68-69, which may be satisfied without demonstrating Defendant's subjective knowledge of the truncation provision. *See Rosenthal v. Longchamp Coral Gables LLC*, No. 08–21757–CIV, 2009 U.S. Dist. LEXIS 59084, at **5-6 (S.D. Fla. June 29, 2009) (citing *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008)). A violation is reckless "if it was 'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time.'" *Fuges v. Southwest Fin. Servs.*, Ltd., 707 F.3d 241, 249 (3rd Cir. 2012) (quoting *Safeco*, 551 U.S. at 69-70 ("Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable.")).

Plaintiff's allegations easily clear this low bar. The Complaint contains allegations of fact sufficient to demonstrate that Defendant's conduct was "objectively unreasonable" because it allowed its payment system to systematically print more than the last five digits of its customers' debit or credit card numbers on transaction receipts even though FACTA's ban on this practice is simple, absolute and unambiguous, *see Tchoboian*, 2011 U.S. Dist. LEXIS 158776, at *11 ("FACTA is unambiguous with respect to the limitations it imposes . . . FACTA clearly prohibits the printing of 'more than the last 5 digits of the card number....'"); *Buechler*, 2010 U.S. Dist. LEXIS 40197, at *8 (§1681c(g)(1) "is unambiguous"), and even though the truncation requirement has been widely publicized and Defendant's peers and competitors proceeded to comply. *See Steinberg*, 2009 U.S. Dist. LEXIS 72908, at *5-7 (finding sufficient to infer that the defendant acted knowingly or recklessly: (1) allegations of willfulness based on disclosures provided by major credit card issuers to merchants following the enactment of FACTA; (2) allegations that major credit card companies "notified the merchants, *including*

*the Defendant* that the FACTA prohibited the printing of more than the last five digits of the

credit/debt [sic] card number" or the expiration dates of the card account).

Thus, the allegations of the Complaint are sufficient to establish willfulness either as

knowing or reckless:

> Plaintiff's allegations of willfulness are based on **disclosures provided by major credit card companies** to merchants following the enactment of FACTA. Plaintiff alleges that Defendant had **actual and constructive knowledge of FACTA's requirements several years before it was required to come into compliance**, but nonetheless ignored these requirements after FACTA became effective. The Complaint states that **major credit card companies 'notified the merchants, including the Defendant**, that the FACTA prohibited the printing of more than the last five digits of the credit/debt card number and/or the expiration dates associated with the credit/debit card account and that they were required to comply with the FACTA.' . . . These allegations are sufficient to infer that Defendant acted knowingly or recklessly when it violated the statute.

*Bouton v. Ocean Properties, Ltd.*, 201 F. Supp. 3d 1341, 1351 (S.D. Fla. 2016) (emphasis

added).

The truncation provision is "clearly established," because it has been on the books since

its widely-publicized enactment in 2003 [ECF No. 1-1 ¶¶ 10-11, 15]; because all major credit

card organizations put their merchants (including Defendant) on notice of the requirement and

contractually require them to comply with it [*Id.* ¶¶ 15-19]; because in 2007, the FTC issued a

business alert to merchants warning that under FACTA "[y]ou may include no more than the

last five digits of the card number" on transaction receipts, *Buechler*, 2010 U.S. Dist. LEXIS

40197, at *8; because it was back in the spotlight in 2008 when Congress gave amnesty for

past violations of FACTA so long as the merchant was not violating the truncation provision;

because it remained unchanged and continued to apply to all merchants since then; and because

numerous court decisions addressed the requirement and universally held that printing more

than five digits of the debit or credit card number on a transaction receipt is illegal. Thus, even if not committed knowingly, Defendant's violations were at the very least reckless.

Defendant cannot and does not articulate any reasonable interpretation of the law that would allow it to print more than the last five digits of debit or credit card numbers on its transaction receipts. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) ("The known or obvious risk in this case would be failing to delete the expiration date on the consumer's credit-card or debit-card purchase receipt."). To support its contention, Defendant cites to a handful of unpublished out-of-circuit decisions that are easily distinguishable from the present case. [*See* ECF No. 18 at 10-11]; *Reyes v. US Airways, Inc.*, No. 10-62165-CIV, 2011 WL 13239539, at *2 (S.D. Fla. Mar. 22, 2011) ("Defendant relies upon cases outside of this Circuit in support of its argument that a single violation does not support a claim for willful violation of FACTA. Yet [courts] within this Circuit when faced with allegations almost identical to Plaintiff's found such allegations to be sufficient to state a claim").[3]

Here instead, Plaintiff has plausibly alleged *specific* facts which demonstrate Defendant knowingly violated of FACTA, or at least recklessly. Defendant knew its system

---

[3] The cases Defendant relies on all dealt with generalized allegations of knowledge. *Komorowski v. All-Am. Indoor Sports, Inc.*, 2013 WL 4766800, at *2 (D. Kan. Sept. 4, 2013) ("Plaintiffs' assertions of both actual and constructive knowledge are based **solely** on the fact that during the three year phase-in period for the relevant FACTA requirement, there was extensive publicity regarding those requirements) (emphasis added); *Vidoni v. Acadia Corp.*, 2012 WL 1565128, at *4 (D. Me. Apr. 27, 2012) ("Merely being aware of a statute[] is insufficient to state a claim for willfulness. . . . [A]llegation that the Defendant actually was complying with FACTA at other locations undermines the Plaintiff's claim that the Defendant willfully violated FACTA at the Jordan Pond House Restaurant.); *Seo v. CC CJV Am. Holdings, Inc.*, 2011 WL 4946507, at *2 (C.D. Cal. Oct. 18, 2011) ("Plaintiff's allegations with respect to CJV's knowledge of, and disregard for, FACTA's provisions center on CJV's membership in the National Association of Theater Owners. . . . These conclusory assertions, however, are unsupported by any pled facts."); *Huggins v. SpaClinic, LLC*, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) ("Plaintiff alleges that FACTA's requirements were well-publicized and that credit card companies required compliance with the statute, but **these allegations are not specific to the defendant**.") (emphasis added); *Reed v. Swatch Grp. (US), Inc.*, 2014 WL 7370031, at *3 (D.N.J. Dec. 29, 2014) ("Plaintiffs neither assert nor show that this Defendant in particular actually received, reviewed, or was otherwise made familiar with FACTA's requirements.").

was printing receipts bearing ten digits of its customers' credit and debit card numbers, or it recklessly failed to acquire such knowledge by burying its head in the sand. Further, Plaintiff adequately alleged Defendant was aware of the five-digit limitation and yet continued to violate it on a massive scale. Therefore, the Amended Complaint plausibly and specifically alleges a willful violation of FACTA, and Defendant's Motion to Dismiss should be denied.

### C. __Plaintiff Is in the Zone of Interest Protected by FACTA and Has Sufficiently Alleged Proximate Causation__

#### (i)  *Plaintiff Is in the Zone of Interest*

Defendant attempts to challenge Plaintiff's standing based on whether her injuries were within the "zone of interests" protected by the statute at issue, and thus, whether she is able to satisfy statutory or prudential standing. The injury alleged by Plaintiff rests squarely within the zone of interests protected by FACTA, and Plaintiff's allegations fully satisfy "statutory" or "prudential" standing. As the Supreme Court explained in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, a plaintiff who seeks to bring a lawsuit under a statute must "fall within the zone of interests protected by the law invoked." 572 U.S. 118, 126 (2014). Statutory standing is not the same as Article III standing. Article III standing is a constitutional requirement, *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (May 24, 2016), whereas statutory standing is merely a prudential one, s*ee Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004). Prudential standing "is satisfied when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute in question." *Federal Election Commission v. Akins*, 524 U.S. 11, 20 (1998).

"The Supreme Court has explained that [a court's] inquiry is not so demanding as to deny potential relief to a person whose interests are, at least, arguably protected by the relevant

statute." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1269 (11th Cir. 2011). Prudential standing simply requires that "[i] the plaintiff asserts his own rights and not the rights of others, [ii] that federal courts not adjudicate generalized grievances, and [iii] that the plaintiff's complaint falls within the zone of interests protected by the [constitutional provision] in question." *Newton v. Duke Energy Fla., LLC*, No. 16-CV- 60341-WPD, 2016 WL 10564996, at *5 (S.D. Fla. Sept. 21, 2016) (quoting *Pace v. Peters*, 524 Fed. Appx. 532, 536 (11th Cir. 2013).

Here, Defendant asserts that Plaintiff lacks statutory or prudential standing because she has not suffered an injury within the zone of interests protected by FACTA. Defendant's argument overlooks binding precedent, the unambiguous language of FACTA and its legislative history, and therefore it is flatly wrong. Plaintiff is a consumer who conducted business with Defendant, and Defendant, as an entity that "accepts credit cards or debit cards for the transaction of business" is required under FACTA to not "print more than the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g). Plaintiff alleges that Defendant willfully violated FACTA by printing more than the last five digits of her card on a receipt provided to her while transacting business. [ECF No. 1-1 ¶¶ 28-29]. Because the statute specifically regulates the type of transaction that occurred between Plaintiff and Defendant, Plaintiff is within the zone of interests to be protected by the statute, and prudential standing is therefore satisfied. *See* 15 U.S.C. § 1681n (allowing "any consumer" to sue for civil damages).

Moreover, Plaintiff was exposed to a higher risk of identity theft because of Defendant's violation, and FACTA was enacted precisely to reduce the risk of identity theft,

not to outlaw identity theft. *See Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059 (D.C. Cir. 2019) (rejecting the defense that the plaintiff had not suffered harm because she was not a victim of identity theft, noting that "FACTA itself does not prohibit the crime of identity theft; instead, it establishes a procedural requirement to ensure that consumers can use their credit and debit cards without incurring an increased risk of identity theft."). The Plaintiff, here like in *Jeffries*, was exposed to the precise risk that FACTA aims to protect against by way of the truncation requirement. Congress judged that risk sufficiently concrete to create a private right of action and to provide statutory damages as an alternative to actual damages.

Defendant asks this Court to overlook the plain language of the statute which unambiguously prohibits precisely the type of conduct Defendant engaged in—the disclosure of credit or debit card numbers—and by grafting together cherry-picked pieces of legislative history, Defendant contends that it may inflict with impunity the exact harm FACTA seeks to prevent. Tellingly, Defendant fails to cite to a single case wherein a court premised the dismissal (or affirmed a dismissal) of a FACTA claim on a "zone-of-interests" challenge. Notably, the same sections of legislative history that Defendant refers to notice the importance of the proper truncation of the card account numbers:

> Experts in the field agree that **proper truncation of the card number**, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date**, prevents a potential fraudster from perpetrating identity theft or credit card fraud.**

[ECF No. 18 at 5] (citing PL No. 110–241 § 2, 122 Stat 1565) (emphasis added).

Importantly, when Congress enacted FACTA, it intended to "prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make

improvements in the use of, and consumer access to, credit information, and for other purposes." PL 108–159, December 4, 2003, 117 Stat 1952. Prevention of identity theft was one of the many purposes of the statute. And as the Eleventh Circuit noted "[t]he truncation requirement reflects Congress's view that printing more than the last five digits of a credit card number contributes to the problem of identity theft." *Muransky*, 922 F.3d at 1187; *see also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) ("The FCRA endeavors to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy,' by, among other things, compelling merchants to adopt procedures to safeguard consumers' credit information.").

Last, "even absent actual damages, a plaintiff's injury under FACTA can be redressed by the court." *Kirik v. VII Holiday Isle, L.L.C.*, No. 10-10008-CIV, 2010 WL 11601565, at *3 (S.D. Fla. May 19, 2010) (citing *Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1166 (D. Kan. 2008) (finding that FCRA confers a private right of action for a FACTA claim under § 1681n even in the absence of actual damages); *MGM Mirage*, 524 F.Supp.2d at 1231 (finding that plaintiff had standing to sue under FACTA even though plaintiff did not allege actual harm); *Ehrheart v. Verizon Wireless*, 547 F. Supp. 2d 463, 464 (W.D. Pa. 2007) (finding that under §1681n a plaintiff who has not suffered actual damages can recover statutory damages for "willful noncompliance")).

> For example, in *Midwest Airlines*, the court held that a plaintiff who suffered no actual damages was still injured by defendant's violation. 537 F.Supp.2d at 1166. The court explained that **FACTA conferred legal rights on the plaintiff and the defendant invaded those rights by violating FACTA.** *Id.* **Thus, even without any actual damages, a plaintiff may still have suffered an injury**.

*Kirik*, 2010 WL 11601565, at *3 (emphasis added).

If Defendant were correct in its theory, the statute would be rendered meaningless. If Congress intended to allow businesses to print the first six digits of a credit or debit card number on a receipt, it could have easily included such a provision in the statute, but it did not. Instead, it expressly prohibited printing more than the last five digits, and no tortuous analysis of the legislative history surrounding FACTA will change that. In sum, Defendant's argument is meritless and the Motion to Dismiss the Complaint should be denied.

### (ii)   *Plaintiff Has Sufficiently Alleged Proximate Causation*

Defendant also presents a novel legal theory and suggests that a consumer who mitigates the damages flowing from Defendant's misconduct, thereby breaks the chain of causation and is left without recourse. Specifically, Defendant urges that Plaintiff in securing the receipt has somehow absolved Defendant of its violation and must now shoulder the burden of the injuries she has suffered, and will suffer, as a result of such violation. As Defendant correctly observes: "[p]roximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark Int'l, Inc.*, 572 U.S. at 133. In other words, "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct" such as a harm that is "purely derivative of misfortunes visited upon a third person by the defendant's acts." *Id.*

Here, the statute prohibits the printing of *more than five* digits of a card holder's credit or debit card number, and Defendant printed *ten* digits of Plaintiff's credit card number. The harm alleged has more than a close connection to conduct FACTA prohibits; it is identical to

the harm the statute prohibits. Defendant premises its argument on the suggestion that in securing the receipt, rather than discarding it, Plaintiff has now created a superseding and intervening event. The argument is without merit because Plaintiff's reaction to Defendant FACTA's violation is not an unforeseeable event. *See Campos v. Cty. of Kern*, 2017 WL 915294, at *14 (E.D. Cal. Mar. 7, 2017) ("A cause is intervening and superseding if it is unforeseeable"); Dobbs, Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 204 at 705 (2d ed.2011) (explaining that intervening causes become "superseding" only if they are unforeseeable). A reasonable person would foreseeably secure a receipt bearing ten digits of her card account to prevent *additional* risk of identity theft.

Defendant makes this argument despite the fact that it printed the transaction receipt in plain view of its employees and any other individuals within sight of its printing equipment at the point of sale, and despite the fact that its employees handle, view, and transfer the very receipt containing ten digits of Plaintiff's card number before it was ever provided to Plaintiff. Defendant's theory entirely overlooks that the receipt was plainly visible to a number of individuals before it even came into the possession of Plaintiff, yet somehow that exposure, and any additional harm as a result of that exposure, is now extinguished based on what Plaintiff did with the receipt subsequent to that point (which was simply securing the receipt to prevent further dissemination).

Moreover, Plaintiff having to undertake steps to secure the receipt at issue, is itself a concrete injury—not, as Defendant suggests, a superseding and intervening cause that breaks the causation chain. Numerous courts recognized the time spent to safeguard a receipt upon discovering it violates FACTA is an additional injury suffered by the consumers who must

change their conduct to avoid any further risks or harm. *See, e.g.*, *Jeffries*, 928 F.3d at 1070 n. 2 ("There are other indirect harms attendant on a violation of FACTA's truncation requirement. The requirement relieves consumers of having to … safeguard or destroy receipts containing too much information."); *Deschaaf v. Am. Valet & Limousine, Inc.*, 234 F.Supp.3d. 964, 970 (D. Ariz. 2017) ("the consumer must take additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later.").

A change of one behavior is considered injury by itself, not a superseding cause. *See, e.g.*, *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009). The Eleventh Circuit agrees that changing behavior, like Plaintiff here who was forced to safeguard the receipt, is indeed a concrete injury sufficient to confer standing:

> The three plaintiffs are attorneys whose professional duties require them to enter the Judicial Building regularly, and when they do so they must pass by the monument. None of them shares the Chief Justice's religious views, and all of them consider the monument offensive. It makes them feel like outsiders, and two of the plaintiffs have altered their behavior as a consequence.
>
> \*\*\*
>
> Under these facts, the two plaintiffs who have altered their behavior as a result of the monument have suffered and will continue to suffer injuries in fact sufficient for standing purposes.

*Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003).

In addition, Defendant's intervening and superseding event argument is a question of fact not properly resolved on a Rule 12(b) motion to dismiss, and leaves unresolved a number of logical anomalies which are fatal to its Motion to Dismiss. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41 (1996) ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review.");

*Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 124 (1st Cir. 2000) ("Proximate cause is generally a question of fact for the jury.").

In sum, Defendant proposes an interpretation of FACTA and proximate causation whereby no Defendant could be liable for a violation. Defendant's proximate causation argument goes unsupported in both logic and case law and would not be properly resolved at the motion to dismiss stage. Defendant's Motion to Dismiss should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendant's Motion to Dismiss.

Respectfully submitted,

s/ *Scott D. Owens*
Scott D. Owens, Esq. (FBN 0597651)
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Phone: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

James S. Giardina, Esq. (FBN 942421)
**THE CONSUMER RIGHTS LAW GROUP, PLLC**
3104 W. Waters Ave., Ste. 200
Tampa, FL 33614
Phone: 813-413-5610
Fax: 866-535-7199
james@consumerrightslawgroup.com

## **CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on January 6, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel of parties, if any, who are not authorized to receive electronically Notice of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.